**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **AMBER HANEY,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CHARTER FOODS NORTH, LLC, and CHARTER FOODS, INC.**<br><br>Defendants. | Case No. 2:23-cv-00046<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Amber Haney, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Charter Foods North, LLC and Charter Foods, Inc. (collectively, "Charter Foods" or "Defendants") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## INTRODUCTION

1.     Defendants are franchisees of YUM! Brands, a parent company which owns several fast foods chains, including Taco Bell, Long John Silvers, KFC, Pizza Hut Express, and A&W Stores. As franchisees, Defendants operate numerous similar establishments in the Southern and Northeaster United States.

2.     Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' ("Class Members")

1

personally identifying information, such as their names, addresses, dates of birth, and Social Security numbers (the "Private Information") from hackers.

3.      The total number of individuals who have had their data exposed due to Defendants' failure to implement appropriate security safeguards is unknown at this time but is anticipated to be in the hundreds of thousands considering the breadth of Defendants' operating regions.

4.      In or around mid-January 2023, Defendants announced that an unauthorized third-party criminal hacker had gained access to certain of their systems on or around January 13, 2023 (the "Data Breach"). Through the Data Breach, the cybercriminals were able to access files containing current and former employees' Private Information. However, Defendants did not notify Plaintiff or Class Members of the Data Breach until early April, almost *three months* after the Data Breach had occurred.

5.      As a result of this delayed response, Plaintiff and Class Members had no idea – for months – that their Private Information had been compromised and that they were, and continue to be, at a substantial and imminent risk of identity theft and various other forms of personal, social, and financial harm. This risk will remain for their respective lifetimes.

6.      The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves, including but not limited to, names, driver's license numbers, identification card information, and Social Security numbers that Defendants collected from their employees and maintained in their system.

7.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain

government benefits, filing fraudulent tax returns using Class Members' information, and giving false information to police during an arrest.

8. There has been no assurance offered by Defendants that all personal data or copies of data have been recovered or destroyed, or that Defendants have adequately enhanced their data security practices sufficient to avoid a similar breach of their network in the future.

9. Therefore, Plaintiff and Class Members are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of identity theft and other fraudulent misuse of their Private Information, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

10. Plaintiff brings this class action lawsuit to address Defendants' inadequate safeguarding of her and Class Members' Private Information that it collected and maintained, and their failure to provide timely and adequate notice to Plaintiff and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

11. The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendants, and thus Defendants was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

12. Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct as the Private Information that Defendants collected and maintained is now in the hands of data thieves and other unauthorized third parties.

13. Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

3

14.     Accordingly, Plaintiff, on behalf of herself and the Class, asserts claims for negligence, invasion of privacy, breach of implied contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and declaratory and injunctive relief.

## I.     PARTIES

15.     Plaintiff Amber Haney, is, and at all times mentioned herein was, an individual citizen of the State of Ohio.

16.     Defendant Charter Foods North, LLC is a limited liability corporation headquartered at 1111 Gateway Service Park Road, Morristown, Tennessee 37813-2512.

17.     Defendant Charter Foods, Inc. is a for-profit corporation headquartered at 1111 Gateway Service Park Road, Morristown, Tennessee 37813-2512.

18.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the responsible parties when their identities become known.

## II.     JURISDICTION AND VENUE

19.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member, including Plaintiff, is a citizen of a state different from Defendant.

20.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

4

21.     Defendants are headquartered and routinely conduct business in the State where this district is located, have sufficient minimum contacts in this State, and have intentionally availed themselves of this jurisdiction by marketing and selling products and services, employing individuals and conducting business, and by accepting and processing payments for those products and services within this State.

22.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendants do business in this Judicial District.

### III.     FACTUAL ALLEGATIONS

**A.  *Defendants' Business and Collection of Plaintiff's and Class Members' Private Information***

23.     Defendants are franchisees of YUM! Brands, a parent company which owns several fast foods chains, including Taco Bell, Long John Silvers, KFC, Pizza Hut Express, and A&W Stores. As franchisees, Defendants operate numerous similar establishments in the Southern and Northeaster United States.

24.     As a condition of employment with Defendants, they require that their employees entrust them with highly sensitive personal information. In the ordinary course of employment with Defendants, Plaintiff and Class Members were required to provide their Private Information to Defendants.

25.     Because of the highly sensitive and personal nature of the information Defendants acquire and store with respect to their employees, Defendants, upon information and belief, promise to, among other things: keep employees' Private Information private; comply with industry standards related to data security and the maintenance of their employees' Private Information; inform their employees of their legal duties relating to data security and comply with

5

all federal and state laws protecting employees' Private Information; only use and release employees' Private Information for reasons that relate to the services it provides; and provide adequate notice to employees if their Private Information is disclosed without authorization.

26.     By obtaining, collecting, using, and deriving a benefit from their employees' Private Information, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

27.     Plaintiff and Class Members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information, which Defendants ultimately failed to do.

**B.   *The Data Breach and Defendants' Inadequate Notice to Plaintiff and Class Members***

28.     According to Defendants' Notice, they learned of unauthorized access to their computer systems on or around January 13, 2023.

29.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information, including Defendants' employees' names and Social Security numbers.

30.     It was not until on or around April 7, 2023, almost three (3) months after Defendants learned that the Class's Private Information was first accessed by cybercriminals, that Defendants notified Plaintiff that their investigation determined that her Private Information was "accessed" by cybercriminals.

31.     The April 7, 2023 notice letter included a section entitled "What You Can Do," which listed generic steps that victims of data security incidents can take, such as "reviewing your

account statements and monitoring any available credit reports for unauthorized or suspicious activity."

32.     Other than providing an inadequate two years of credit monitoring that Plaintiff and Class Members would have to affirmatively sign up for, along with a call center number that victims could contact, Defendants offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, Defendants sent a similar generic letter to all current and former employees affected by the Data Breach.

33.     Defendants had obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

34.     Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

35.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

36.     Defendants knew or should have known that their electronic records would be targeted by cybercriminals, yet they failed to take the necessary precautions to protect Plaintiff's and Class Members' Private Information from being compromised.

### C.  Defendants Failed to Comply with FTC Guidelines

37.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-

7

making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

38.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

39.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

40.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

41.     As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information evidence their negligent failure to comply with the standards set forth by Section 5 of the FTCA.

42.     Defendants were at all times fully aware of their obligation to protect the Private Information of their employees yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

**D.  Defendants Failed to Comply with Industry Standards**

43.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain, be it from their clientele or employees.

44.     Some industry best practices that should be implemented by businesses like Defendants include, but are not limited to, educating all employees, implementing strong password requirements, implementing multilayer security including firewalls, implementing anti-virus and anti-malware software, encrypting highly sensitive data, implementing multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow at least some, or perhaps all of, these industry best practices.

45.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training

9

staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

46.     Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

47.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### E. Defendants Breached their Duty to Safeguard Plaintiff's and Class Members' Private Information

48.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of their employees.

49.     Defendants breached their obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard their computer systems and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect employees' Private Information;

c. Failing to properly monitor their own data security systems for existing intrusions;

d. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

e. Failing to adhere to industry standards for cybersecurity as discussed above; and

f. Otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' Private Information.

50. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access their computer network and systems which contained unsecured and unencrypted Private Information and exfiltrate such Private Information.

51. Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

52. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft.

## F. Defendants Should Have Known that Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft

53. The FTC hosted a workshop to discuss "informational injuries," which are injuries that employees like Plaintiff and Class Members suffer from privacy and security incidents such

as data breaches or unauthorized disclosure of data.[1] Exposure of highly sensitive personal information that individuals to keep private may cause harm to them, such as the ability to obtain or keep employment. Individuals' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

54. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

55. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

56. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

---

[1] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on April 24, 2023).

Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

57.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

58.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[2] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

59.    Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[2] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited April 24, 2023).

60.    A study by the Identity Theft Resource Center[3] shows the multitude of harms caused by fraudulent use of PII:



61.    Moreover, the value of PII is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that PII has considerable market value.

62.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[4]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[3] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited April 24, 2023).

[4] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited April 25, 2023).

63.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

64.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future and have no choice but to vigilantly monitor their accounts and purchase credit monitoring and identity theft protection for many years to come.

### G. Plaintiff's and Class Members' Damages

65.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

66.     Plaintiff and Class Members entrusted their Private Information to Defendants in order to gain employment. Specifically, Plaintiff worked at one of Defendants' Taco Bell locations from June of 2017 to August of 2017.

67.     Plaintiff's Private Information was subsequently compromised and exfiltrated as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' inadequate data security practices.

68.     As such, Plaintiff and Class Members are at an imminent, immediate, and continuing increased risk of experiencing devastating instances of identity theft, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

69.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to continue to carry out such targeted schemes against Plaintiff and Class Members.

15

70.     The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

71.     Additionally, Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their accounts and records for misuse.

72.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

   a.   The loss of property value of their Private Information;

   b.   Monitoring for and discovering fraudulent charges;

   c.   Canceling and reissuing credit and debit cards;

   d.   Purchasing credit monitoring and identity theft prevention;

   e.   Placing "freezes" and "alerts" with credit reporting agencies;

   f.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

   g.   Contacting financial institutions and closing or modifying financial accounts;

   h.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

   i.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come; and

16

> j. The stress, nuisance, and aggravation of dealing with all of the issues resulting from the Data Breach.

73.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendants, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

74.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## IV.    <u>CLASS ACTION ALLEGATIONS</u>

75.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

76.    Specifically, Plaintiff proposes the following Nationwide Class (also referred to herein as the "Class"), subject to amendment as appropriate:

> **<u>Nationwide Class</u>**
>
> **All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.**

77.    Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which it has a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

17

78.     Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class, as well as to add subclasses, before the Court determines whether certification is appropriate.

79.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

80.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of 100 employees of Defendants whose data was compromised in the Data Breach and likely numbers in the tens of thousands. The identities of Class Members are ascertainable through Defendants' records, Class Members' records, publication notice, self-identification, and other means.

81.     <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether Defendants engaged in the conduct alleged herein;

    b.  When Defendants learned of the Data Breach;

    c.  Whether Defendants' response to the Data Breach was adequate;

    d.  Whether Defendants unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

    e.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

18

f.   Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.   Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h.   Whether Defendants owed a duty to Class Members to safeguard their Private Information;

i.   Whether Defendants breached their duty to Class Members to safeguard their Private Information;

j.   Whether hackers exfiltrated Class Members' Private Information via the Data Breach;

k.   Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l.   Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m.   Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n.   What damages Plaintiff and Class Members suffered as a result of Defendants' misconduct;

o.   Whether Defendants' conduct was negligent;

p.   Whether Defendants was unjustly enriched;

q.   Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

19

r.   Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

s.   Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

82.   <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

83.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel (including local Tennessee counsel and lead counsel that will file motions to appear pro hac vice) is competent and experienced in litigating class actions, including data privacy litigation of this kind.

84.   <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

85.   <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high

20

and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

86.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

87.     Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

88.     Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

89.     Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

90. Defendants' duty also included a responsibility to implement processes by which it could detect and analyze a breach of their security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

91. Defendants knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendants were on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

92. Defendants owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendants' duties included, but were not limited to, the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

    b. To protect employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

    d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA and applicable industry standards;

    e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

93. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

94. Defendants' duty also arose because they were bound by industry standards to protect their employees' confidential Private Information.

95. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care not to subject them to an unreasonable risk of harm.

96. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendants' possession.

97. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

98. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

99. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Allowing unauthorized access to Class Members' Private Information;

d. Failing to comply with the FTCA and applicable industry standards;

e. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

100. Defendants acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

101. Defendants had a special relationship with their employees, including Plaintiff and Class Members.

102. Plaintiff's and Class Members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect their systems (and the Private Information stored thereon) from attack.

103. Defendants' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein and admitted by Defendants in their Notice to Plaintiff and Class Members.

104. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

24

105.     As a result of Defendants' negligence in breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

106.     Defendants also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

107.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

108.     The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

109.     Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

110.     In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**INVASION OF PRIVACY**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

111.     Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

112.     Plaintiff and Class Members maintain a privacy interest in their Private Information, which is highly sensitive, confidential information that is also protected from disclosure by applicable laws and industry standards, as set forth above.

113.    Plaintiff's and Class Members' Private Information was contained, stored, and managed electronically in Defendants' records, computers, and databases and was intended to be secured from unauthorized access to third-parties because highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities were only shared with Defendants for the limited purpose of obtaining employment.

114.    Additionally, Plaintiff's and Class Members' Private Information is highly attractive to criminals who can nefariously use such Private Information for fraud, identity theft, and other crimes without the victims' knowledge and consent.

115.    Defendants' disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties by allowing such parties to gain access to their network resulted from Defendants' failure to adequately secure and safeguard Plaintiff's and Class Members' Private Information. Such failure was the direct and proximate cause of unauthorized intrusions into Plaintiff's and Class Members' places of solitude and seclusion that are highly offensive to a reasonable person.

116.    Such exploitation of Plaintiff's and Class Members' Private Information was done for Defendants' business purposes.

117.    Defendants' unauthorized disclosure of Plaintiff's and Class Members' Private Information to criminal third parties permitted the electronic intrusion into private quarters where Plaintiff's and Class Members' Private Information was stored.

118.    Plaintiff and Class Members have been damaged by Defendants' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

119.     Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

120.     Defendants provided employment to Plaintiff and Class Members.

121.     Defendants, as employers, held the Private Information on behalf of Plaintiff and Class Members. Holding Plaintiff and Class Members' Private Information was part of Defendants' regular business practices, as agreed by the parties. When Plaintiff and Class Members joined Defendants' employment, they agreed to have their Private Information stored in Defendants' network.

122.     Plaintiff and Class Members entered implied contracts with Defendants in which Defendants agreed to safeguard and protect such Information and to timely detect any breaches of their Private Information. Plaintiff and Class Members were required to share Private Information to obtain employment. In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

123.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

124.     Defendants' implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4)

27

designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

125. Defendants breached these implied promises they made with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to notify Plaintiff and Class Members thereof within a reasonable time.

126. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

127. Had Defendants disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices in place to secure such sensitive data, Plaintiff and Class Members would not have provided their Private Information to Defendants.

128. Defendants recognized that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

129. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

130. Plaintiff and Class Members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

131. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen their data security systems and monitoring procedures; (ii)

submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free lifetime credit monitoring to all Class Members.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

132.     Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

133.     Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

134.     Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendants.

135.     Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII and financial information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and financial information and storage of other personal information after Defendants knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

136.     Defendants acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

137.     Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

29

138.     This Count is pleaded in the alternative to Count III above.

139.     Plaintiff and Class Members conferred a benefit on Defendants. Specifically, they provided Defendants with their Private Information, which Private Information has inherent value. In exchange, Plaintiff and Class Members should have been entitled to have Defendants protect their Private Information with adequate data security, especially in light of their employer-employee relationship.

140.     Defendants knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendants profited from Plaintiff's retained data and used Plaintiff and Class Members' Private Information for business purposes.

141.     Defendants failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class members for the value that their Private Information provided.

142.     Defendants acquired the Private Information through inequitable record retention as it failed to disclose the inadequate security practices previously alleged.

143.     If Plaintiff and Class Members knew that Defendants would not secure their Private Information using adequate security, they would have made alternative employment choices that excluded Defendants.

144.     Plaintiff and Class Members have no adequate remedy at law.

145.     Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

146.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the imminent and

substantial risk of actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

147. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

148. Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

149.    Plaintiff restates and realleges allegations stated from paragraphs 1-87 as if fully set forth herein.

150.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and common law described in this Complaint.

151.    Defendants owe a duty of care to Plaintiff and Class Members, which required them to adequately secure Plaintiff's and Class Members' Private Information.

152.    Defendants still possess Private Information regarding Plaintiff and Class Members.

153.    Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of her Private Information will occur in the future.

154.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.  Defendants owes a legal duty to secure their current and former employees' Private Information and to timely notify them of a data breach under the common law and industry standards;

    b.  Defendants' existing security measures do not comply with their implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect employees' Private Information; and

c.  Defendants continue to breach this legal duty by failing to employ reasonable measures to secure employees' Private Information.

155.  This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with legal and industry standards to protect former and current employees' Private Information, including the following:

a.  Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members; and

b.  Order that, to comply with Defendants' explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

i.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii.  engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.  auditing, testing, and training their security personnel regarding any new or modified procedures;

iv.  segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.  conducting regular database scanning and security checks;

33

vi.        routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

vii.       routinely and continually purging all employee data it no longer needs to adequately conduct their business operations; and

viii.      meaningfully educating their users about the threats they face with regard to the security of their Private Information, as well as the steps Defendants' employees should take to protect themselves.

156. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendants. The risk of another such breach is real, immediate, and substantial. If another breach at Defendants occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

157. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants has a pre-existing legal obligation to employ such measures.

158. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendants, thus preventing future injury to Plaintiff and other former and current employees whose Private Information would be further compromised.

34

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Nationwide Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

35

DATED: May 10, 2023   Respectfully submitted,

/s/ *Edwin E. Wallis III*

Edwin E. Wallis III (TN #23950)
David C. Riley (TN #21663) (*pro hac vice* to be filed)
**GLASSMAN, WYATT, TUTTLE & COX, P.C.**
26 North Second Street
Memphis, Tennessee 38103
Tel: (901) 527-4673
Fax: (901) 521-0940
E: ewallis@gwtclaw.com
E: driley@gwtclaw.com


**SIRI & GLIMSTAD LLP**

Mason A. Barney (*pro hac vice* to be filed)
Tyler J. Bean (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com